John HANKINS, Appellant,

v.

The FIRST NATIONAL BANK OF
PANHANDLE et al., Appellees.

No. 6572.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 20, 1956.

Rehearing Denied March 12, 1956.

Gibson, Ochsner, Harlan, Kinney &
Morris, Amarillo, John F. Studer, Pampa,
for appellant.

Curtis Douglas, Pampa, Culton, Morgan,
Britain & White, Amarillo, for appellees.

NORTHCUTT, Justice.

The First National Bank of Panhandle
sued John Hankins and his wife, Jewel
Moore Hankins, on two promissory notes;
each of the defendants filed separate an-
swers; and John Hankins filed a cross-
action against The First National Bank of
Panhandle and a third-party action against
The American National Bank of Amarillo.
The action of John Hankins against each
of the banks was for damages for failure
to make a loan to Hankins. Each of the
banks filed a motion for summary judgment
and each of those motions was sustained.
John Hankins is the only party appealing
herein and Mrs. Jewel Moore Hankins
will not be considered any further.

Appellant pleaded that the banks and
each of them, for a valid consideration, en-
tered into a complete, certain, definite and
enforceable contract to lend money to ap-
pellant with which to purchase 508 head of
cattle. That, in reliance upon said con-
tracts and solemn promises made by said
banks, the appellant purchased and agreed
to pay for said cattle with money that was
to be lent to appellant pursuant to said con-
tract. Depositions of appellant and others
were taken in the case and appellant testi-
fied that on July 18th, being July 18, 1953,
he contracted to buy the cattle in question
and that 58 head were to be delivered Au-
gust 15th and 450 head to be delivered Oc-
tober 15th and 16th, 1953. He further tes-
tified that the Panhandle bank let appel-
lant have the money to pay for the 58
head; before the time to receive the 450
head, he talked with Mr. Wisdom, who was
connected with the Panhandle bank, and
Mr. Wisdom informed him that they had
loaned him all the money that they could;
that the first time that he ever contacted
Frank Paul, Jr., with the Amarillo bank,
was October 12th and that Mr. Paul said
"We will pay for the cattle;" that on Oc-
tober 14th, he again made the same state-
ment; he understood, from that, that both
banks would participate in making the loan
but there was no agreement as to how much
each bank was to pay; nothing was said as
to any rate of interest, how long the loan
was to be for or for what amount but the

amount would be determined by the weight of the cattle. The trial court sustained the motions of both banks for summary judgment and, from these judgments, the appellant has perfected this appeal contending there were disputed issues of fact that should have been submitted to a jury. According to appellant's pleading he contends that, *in reliance upon the promise of a loan to be made by appellees,* he contracted to purchase the 508 head of cattle. According to his own testimony, this is shown not to be true. Appellant testified he contracted for these cattle on July 18th; he went to see Vern Wisdom and borrowed the money to make the down payment on the cattle; he later received the 58 head of cattle; paid for them; and made a note for that amount. He did not contend that Mr. Wisdom, at that time, agreed to pay for the 508 head of cattle or the remaining 450 head but testified that, before the time to receive the 450 head, he was talking with Mr. Wisdom about the amount of money that it would take to carry him over to the next year and that Mr. Wisdom informed him that they had loaned him all the money that they could. It was after this conversation with Mr. Wisdom that he ever contacted Mr. Paul with the American National Bank. The only conversations relied upon by appellant were the conversations had on the 12th and 14th of October and appellant was to receive the cattle on October 15th and 16th. The final conversation relied upon by appellant took place on October 14th when *Mr. Wisdom, Art Bralley and Mr. Wisdom* (emphasis ours), came out to the ranch. In this conversation of October 12th, Vern Wisdom, Frank Paul, Jr., and some other fellow that was with him from the bank agreed to pay for the cattle and not the grass, the feed for them. At the time, Mr. Wisdom, Art Bralley and Mr. Wisdom made the final visit on October 14th and told appellant they would pay for the cattle, appellant told Vern Wisdom that he would get the grass some way.

It is clear from the evidence of appellant that he did not know who was going to advance the money but merely supposed it was to be the two banks, appellees herein. Nei-

ther did he know the rate of interest nor when the loan was to mature. All of these matters would have had to have been agreed to in the future. Appellant had already contracted to buy the cattle long before ever talking to appellees about the loan here in question and did not purchase them upon any promise of appellees to make a loan to him as pleaded by him. Taking everything that appellant said to be true, it could be nothing more than an agreement to enter into a contract later and there being no agreement as to its terms, therefore, it is not enforceable. Stekoll Petroleum Co. v. Hamilton, 152 Tex. 182, 255 S.W.2d 187 by the Supreme Court. Judgment of the trial court is affirmed.